It was held in the case of Jean Torres v. Felix Falgoust, 35 La. Ann. 818: ·

"A motion for a certiorari to perfect the transcript, made after a motion to dismiss has been filed, and on the day of trial, cannot be granted where the transcript is defective by the fault of the mover."

This early ruling of the Supreme Court, which is so clearly applicable to the facts here, has been consistently adhered to in innumerable later decisions.

Appeals are favored, and we are reluctant to deny the appellant relief; but it can readily be seen that if we establish a precedent, which litigants might rely upon, to the effect that there is no necessity for paying for the note of evidence and filing it with the clerk of the trial court until the case is called for hearing on appeal, such precedent would invite and lead to endless confusion, delay, and injustice.

For the reasons assigned, the motion to remand is overruled, and the motion to dismiss the appeal is sustained.

## EAVES v. HILLYER–EDWARDS–FULLER, Inc.

### No. 4091.

Court of Appeal of Louisiana. Second Circuit, First Division.

### Feb. 16, 1932.

For former opinion, see 135 So. 720.

Argued before DREW, McGREGOR, and CULPEPPER, JJ.

Thornton, Gist & Richey, of Alexandria, for appellant.

Julius T. Long, of Shreveport, for appellee.

**CULPEPPER, J.**

This case is before the court on rehearing from an opinion handed down in July of last year, wherein the judgment of the lower court, rejecting plaintiff's demands, was reversed and judgment rendered for plaintiff as prayed for.

It is a suit brought under the Employers' Liability Act, No. 20 of 1914, as amended, by plaintiff, Mrs. Lola Johnson Eaves, individually and for the use and benefit of her three minor children, widow and heirs of Ivy Eaves, who died September 25, 1930, of injuries received September 5, 1930, while engaged in hauling logs for Mitchell Johnson in the parish of Rapides.

It is alleged that the deceased was in the employ of Hillyer-Edwards-Fuller, Inc., made defendant herein, at the time he received said injuries, in the capacity of operating or driving a motortruck in hauling logs for defendant company, and was earning $3.50 per day as wages; that (quoting):

"Through some kind of contract between the said corporation and one Mitchell Johnson, the said Johnson was superintending the hauling of the said logs and the operation of the truck the deceased was driving; but the said logs were cut and being hauled for sawing and manufacture into lumber at and by the sawmill of the said corporation at or near Glenmora, Louisiana, and had been made from timber belonging to the said corporation; that said corporation paid said Johnson for said hauling and the said Johnson paid the said deceased for his said work.

"That the nature of the relations existing between the said corporation, the said Mitchell Johnson and the deceased was such that the said corporation is liable to petitioner."

Plaintiff makes demand for $15.60 per week for a period of 300 weeks and for $150 additional to cover for burial and other incidental expenses.

Defendant, answering, denies that either the deceased or Mitchell Johnson was, at the time (quoting), "in any manner, or sense, employee of the respondent company, but that the said Ivy Eaves * * * was working for Mitchell Johnson, who was conducting an independent logging business, and from whom your respondent was purchasing logs at an agreed rate per thousand feet log measure delivered at an agreed point on respondent's railroad track."

In our former opinion we held that the relationship between Mitchell Johnson and defendant at the time Ivy Eaves was injured was such as to constitute Johnson as an independent contractor, which entitled plaintiff to recover under the provisions of section 6 of the act, as amended by Act 85 of 1926. The court did not believe the testimony warranted the holding that Johnson was a bona fide purchaser of the timber and seller of the logs cut from same to the defendant, as was contended by defendant.

However, upon a consideration of the application for a rehearing, the court, thinking there was possibly an error in its opinion, agreed to review the case.

We have again gone over and examined the testimony and have carefully studied same together with the argument of counsel and briefs filed.

That Mitchell Johnson employed Ivy Eaves and that Eaves was working for him under said employment at the time of the accident, all parties fully agree. It is equally clear that Eaves was engaged at the time as truck driver for Johnson, hauling logs for Johnson from timber Johnson had bought from the B. E. Smith Lumber Company through Mr. B. E. Smith, and delivering the logs to defendant company at a point on its railroad tracks, at which point defendant scaled or measured the logs, then accepted them and conveyed them to its sawmill at Glenmora, where they were manufactured into lumber.

The testimony shows that Johnson carried on all of the negotiations with Smith in his purchase of the timber from Smith. There is no evidence going to show that Johnson consulted with defendant about buying the timber before seeing Smith in an effort to buy, but apparently conceived the idea himself after he had been laid off by defendant from operations under the contract which he previously had with defendant to cut logs from defendant's own timber held by it in fee. Johnson owned his own logging outfit, and when his contract terminated he was without work. He set about to find employment and went apparently of his own volition to Mr. B. E. Smith to purchase timber, in all probability having in mind to cut the timber and sell it if he could get a market for same. Mr. Smith made him a stumpage price of $3 per thousand for his black gum and $4 for all other hardwood. Johnson then went to defendant, and was offered, through Mr. King, manager for defendant company's hardwood mill at Glenmora, $12 per thousand feet for black gum logs and $14 for all other kinds, delivered on the company's log road. Johnson then saw Smith, purchased the timber, and started his operations of cutting and delivering the logs as cut. Ivy Eaves was engaged as driver of one of his trucks and had been working about a week when the accident occurred. It was agreed between Johnson and Smith that the timber should be paid for as cut, and Smith required that the money should be deducted out of the money Johnson was to receive for the logs from defendant, and should be held at the company's office for Smith when he called for it. Smith saw Mr. King and instructed that the money be so held. Other than this communication between Smith and King, no conversation or understandings are shown to have taken place between Smith, the

seller of the timber, and defendant the buyer of the logs from Johnson. This conversation was had after Smith had sold the timber to Johnson and formed no part of the negotiations had leading up to or at the time of the sale. Smith called at the company's office about once a month thereafter, and collected his money.

Mitchell Johnson testified that he bought the timber from Mr. Smith; that he was the owner of same and of the logs which he manufactured from it; had full control over same; could have sold them to any one he pleased, either as a whole or a part. He contracted to sell them to defendant for an agreed price payable at defendant's office as delivered, which he had a right to do under his agreement with Smith from whom he had bought the timber.

From our examination of the testimony as a whole, we have reached the conclusion that we were in error in holding formerly that Mitchell Johnson was an independent contractor under defendant, such as to entitle plaintiff to recover under the section of the act referred to, and we now conclude that Johnson was a bona fide purchaser of the timber from the B. E. Smith Lumber Company, and that he sold the logs which he manufactured from the timber to defendant. Smith testifies positively that he sold the timber to Johnson. King, who negotiated with Johnson for defendant company, testified that he bought the logs from Johnson, and Johnson, as previously stated, testified he bought the timber from Smith and sold the manufactured logs to defendant through King, its manager. This testimony is direct, positive, and not contradicted.

Plaintiff's counsel urges that there are circumstances connected with the transaction which show to the contrary, one being that Johnson turned into defendant's office his pay rolls and that his employees received their pay from Mr. Phillips, the company cashier. Another was that Mr. Smith's stumpage price was also paid to him at defendant's office as the logs were delivered. We do not think, however, that these circumstances can be held to convert the direct and positive testimony that Johnson bought the timber and sold it in manufactured logs to defendant into and make Johnson an independent contractor, so as to bring the case within the act. Miller v. Brenner Lbr. Co., 8 La. App. 141.

Neither would other circumstances, such as the agreement beforehand by defendant to buy the logs from Johnson and pay for same at defendant's office after being delivered and scaled by defendant. It is only reasonable that there was some previous understanding in this regard between the parties. West v. Martin Lbr. Co., 7 La. App. 366.

Plaintiff's counsel cites a number of decisions where this court granted compensation and in which he contends the facts were al-

most identical with those in this case. We have read these decisions and cannot agree with the learned counsel. Counsel cites Robinson v. Younse Lbr. Co., 8 La. App. 160. In that case the court found the facts to be that J. R. Younse owned the sawmill, T. R. Younse owned the logging outfit, and that they entered into a contract by which the latter was to log the mill from timber procured by the former, and each was to share equally in the profits. This made the enterprise a joint one. Plaintiff was injured while working for T. R. Younse in the logging department. J. R. Younse was held liable with T. R. Younse because both were engaged in a joint enterprise. No such relations are found to exist in the present case. Counsel cites the case of Carter v. Colfax Lbr. & Creosoting Co., 9 La. App. 497, 121 So. 233, as being under almost similar circumstances to this case. In the cited case the syllabus is indicative of the court's findings, which reads as follows:

"Where the evidence clearly shows that the defendant lumber company was not purchasing timber from Tom Matkins, but Tom Matkins was employed by the lumber company to log particular timber at so much per thousand feet; one employed by Tom Matkins to assist him in this work can recover * * * from the lumber company."

The difference between this case and the present one is obvious. In the present case defendant company was purchasing logs from Mitchell Johnson, whereas in the cited case Matkins was employed by defendant company to log the timber.

In that case the court states that "Matkins, according to the testimony, considered himself all along that he was an employee of defendant company." Such was not Johnson's position in the present case at the time Eaves was hurt. Johnson asserts positively at that time he was selling logs, as owner thereof, to defendant.

Counsel cites a number of Supreme Court decisions, and apparently relies most strongly upon a decision handed down by Justice Thompson in Durrett v. Woods, 155 La. 533, 99 So. 430, 431, in which counsel contends that the previous rulings of the court were modified as to the scope of section 6 of the act as amended by Act 85 of 1926. The Durrett Case involved primarily a contention as to what constituted hazardous work. It did not involve the question as to whether a sawmill, in obtaining logs from another to manufacture into lumber, obtains them from an independent logging contractor through some working agreement between them, or whether the sawmill owner was buying its logs outright from a log vendor as is shown in the present case. In the Durrett Case plaintiff was employed directly by defendant. Such is not the case now before the court. The defense was that the business in which defendant was engaged and for which Dur-

rett was employed was not hazardous. That is not the defense in the present case. Defendant in the cited case was engaged in hauling logs, timbers, machinery, etc., to locations for the erection of derricks and drilling oil wells in an oil field, also in removing same from one well to another location for a new well. Defendant had nothing to do with the actual drilling of such wells, nor with operating same after their completion. The court in discussing that case used the following language:

"It goes without saying that no oil or gas well could be constructed and operated without the logs and timbers for the derrick and without the machinery and other appliances. Therefore the furnishing of same and the placing of same upon the location for the well was to all intent and purpose the initiation, the beginning, and a part of the construction and erection and putting in operation of an oil well within the meaning of the statute."

The court then uses the following language:

"But, conceding that we are wrong in this construction, then certainly the hauling of the logs, timber, and lumber for the derrick was 'logging and lumbering' in the sense in which these terms are used in the statute."

The court was apparently discussing the various classifications of businesses named in the statute as hazardous.

Can it be said, however, that for these reasons plaintiff in the present case can recover from defendant when her husband was not in defendant's employ, but was in the employ of Mitchell Johnson who was cutting his own timber into logs and selling them to defendant to be manufactured into lumber by defendant, when the logging business of Johnson was a separate and distinct business from the operation by defendant of a sawmill? It is true that a sawmill must have logs, otherwise it cannot operate. It is likewise true that sawmilling is designated in the statute as a hazardous business, and likewise "logging and lumbering" is so designated. The statute lists them separately, which indicates that one person may have as his business that of sawmilling and another that of logging, and so far as the two persons are concerned, each one's business can be separate and distinct from the other, and neither one be responsible for the other's employees.

There is only one provision of the statute, it appears, which provides payment of compensation by one to an employee not immediately employed by him. That is the provision in section 6 of the act as amended by Act 85 of 1926, which is the case of an independent contractor or a subcontractor, as previously discussed herein, and in our former opinion. And since we have already concluded that Mitchell Johnson was not an independent contractor, nor a subcontractor, as related to defendant, this case does not come within the provisions of that section of the act.

The fact that Mitchell Johnson had, up to a short time prior to his purchase of the Smith timber, been logging defendant's privately owned timber as an independent logging contractor under defendant, cannot alter the fact that he was at the time Ivy Eaves was hurt, engaged in the actual buying of timber, and manufacturing and selling logs on his own account.

The fact that Johnson's employees, including Eaves, were still being carried on defendant's list of insured employees when Eaves was injured, the same as they had been while Johnson was logging defendant's timber, plaintiff contends, is the strongest kind of evidence that defendant's and Johnson's relations still remained the same as before. In the light of the explanations by Mr. King and of Mr. Phillips, that this insurance was being carried through error, and the lower court evidently so found, we do not feel justifiable, in consideration of the testimony as a whole, in holding that it upsets the positive proof to the contrary. King testifies he did not know that this insurance was being continued on Johnson's employees. Phillips testified he knew it was being carried, but that it was a mistake of his in holding out money of Johnson's employees to cover insurance, and that he had instructions from Mr. King to hold out for insurance only when the men were engaged in cutting timber belonging to the defendant company. King testified his company carried insurance on Johnson's men only while they were cutting the company's timber, and had so instructed Mr. Phillips, the cashier; that the reason he did so was that he knew his company would be liable for it while Johnson was so engaged, and Johnson himself was unable to pay the necessary insurance premiums. Johnson corroborates King in this respect. The trial judge evidently believed that these men were telling the truth about this matter, and we cannot say he misjudged them, knowing them as he evidently did.

It cannot be said that defendant was the insurer of Johnson's employees, as it cannot under the provisions of the Employers' Liability Law engage in or become bound as such.

For the reasons assigned, the opinion rendered by this court July 14, 1931, in this case is recalled and set aside, and it is now decreed that the judgment of the lower court be reinstated and affirmed, and it is so ordered.