### WINDHAM v. NEWPORT CO. et al.
### No. 1029.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1932.

C. V. Pattison, of Lake Charles, for appellant.

McCoy & Moss, of Lake Charles, and Spearing & McClendon, of New Orleans, for appellee.

MOUTON, J.

It is alleged by plaintiff that, while employed by Hollie, an independent contractor for the Newport Company, he received an injury for which he is suing that company in compensation under the provision of the Employers' Liability Act; also the United States Fidelity & Guaranty Company, which he alleges carried compensation insurance for the Newport Company.

Holley, who plaintiff alleges was an independent contractor of the Newport Company, and of whom he was an employee, testifies that he had made a contract with Hay Wood, agent of the Houston Oil Company, to blast pine stumps from the land of the Houston Oil Company. He says that under this agreement with that company he had to blast these stumps off of that land, and had engaged five employees to carry out his agreement, among whom was the plaintiff in this case.

The testimony of the plaintiff is that, after blasting one of these stumps, a piece was left in the ground, 'that, while pressing against it, his hand slipped, his body fell on the piece of stump which struck him in the side, causing the injury for which he is demanding compensation.

There is no evidence to show that the Newport Company had any interest in the land of the Houston Oil Company from which these stumps were being blasted, in the stumps that were being removed therefrom by Hollie, or in the execution of the work Hollie had undertaken to perform.

It is shown that the Newport Company was operating a steam distillation plant for the manufacture of rosin from pine stumps which it was buying from Hollie who was hauling them from the land of the Houston Oil Company. The Newport Company was buying these stumps from Hollie at $3.30 per ton at the plant, and was under no obligation whatsoever to purchase any specified number of tons, and was at liberty, at any time, to discontinue its purchases.

Douglass, who was buying stumps for the Newport plant, testifies that Wood, the agent of the Houston Oil Company, came into his office with Hollie and asked him if, acting for the Newport Company, he would agree to deduct a stumpage of 25 cents per ton from the stumps he was buying from Hollie. He agreed to make this deduction from the stumps the Newport Company was buying from Hollie, and this amount, so deducted. the evidence shows was sent to the Houston Oil Company. It was shown that the Newport Company was selling caps, fuses, and dynamite to Hollie which he was using in blasting these stumps on the land of the Houston Oil Company; that this was charged to his current account with the Newport Company, was deducted, with the 25 cents per ton sent the Houston Oil Company, from the amount he was getting per ton for his stumps, and that the balance was paid him by the Newport Company. It does not appear that the Newport Company was getting any remuneration for its services in sending the 25 cents stumpage to the Houston Oil Company. and, so far as the record discloses, was attending to that gratuitously.

It is therefore clear that the contract to blast this timber, in execution of which plaintiff, Windham, was injured, was an agreement that had been entered into between Hollie and the Houston Oil Company; and it is also well established that the Newport Company had no contractual relations whatsoever with Hollie in connection with his agreement to carry out his obligations under his contract with the Houston Oil Company.

This suit is brought against the Newport Company under the provisions of section 6 of Act No. 85 of 1926, page 113, which reads as follows: "That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee * * * or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him."

In the case of Seabury v. Arkansas Natural Gas Corporation, 171 La. 199, 130 So. 1, it was shown that the defendant company was engaged in the business of drilling oil wells, and employed Tom Jarrell to remove

the pipes from one well to another, who employed Seabury, the plaintiff, to do that work. Seabury was injured while so employed, and sued the Natural Gas Corporation, the employer of Jarrell. It was conceded that Seabury, employee of Jarrell, could have recovered damages against Jarrell, but it was contended that defendant corporation had not employed Seabury, plaintiff, and for that reason he could not recover against defendant corporation.

The court held, and most properly, that Seabury was entitled to a direct action as a workman or employee against that corporation as a principal engaged in the business for which the workman, Seabury, was employed, although this workman was employed by an independent contractor or subcontractor of such principal.

It will be observed in that case that the corporation was engaged in drilling wells, had employed Jarrell to move the pipes who employed Seabury to do that work and who was injured while removing the pipes.

In this case, if the Newport Company, defendant, had employed Hollie to blast these stumps, plaintiff, Windham, as his workman or employee, being injured while doing that work, would be entitled to recover compensation under the statute against defendant, as principal, under the decision above cited. It is, however, clearly shown, as hereinabove stated, that Hollie had no contract with the Newport Company to blast these stumps, and there could be no contractual relations between defendant company and plaintiff, Windham, so as to hold it liable for the injuries suffered by Windham while blasting these stumps for Hollie and the Houston Oil Company.

It is not shown that, at the time plaintiff was injured, the Newport Company was engaged in the trade, occupation, or business of blasting stumps, but, conceding that it was, unless it had made the contract with Hollie, who employed plaintiff, Windham, it could not be held responsible to plaintiff for the injuries he received in the execution of a contract made between Hollie and the Houston Oil Company.

The provisions of section 6 of Act No. 85 of 1926 refer to cases where a principal or contractor undertakes to execute any work and contracts with any person (referred to as contractor in the act) for the execution of the work, and this person or contractor engages an employee or workman in the prosecution of the work, who is injured while rendering services as such, the principal or contractor employing any person or contractor is liable in compensation for the injuries received by the workman or employee.

In the instant case the Newport Company was not engaged to "execute any work" in the blasting of stumps, and never employed Hollie to do that work, whose contract for that purpose was exclusively with the Houston Oil Company. When Hollie employed plaintiff, Windham, to assist him in blasting these stumps, he may have brought him in contractual relations with the Houston Oil Company, but certainly not with the Newport Company.

The fact is that defendant company herein never employed Hollie for the execution of any work and he was not either a contractor or subcontractor within the meaning of section 6 of Act No. 85, 1926. The only relation that company had with Hollie was as the purchaser of the stumps he hauled to the plant from the land of the Houston Oil Company, to be sold at a certain fixed price, and, after making the deduction of 25 cents per ton, retained for the Houston Oil Company and for the caps, fuses, etc., bought by Hollie from defendant company, to turn over to him the balance left.

In the case of Morrison v. Weber-King Manufacturing Company, 6 La. App. page 388, decided by this court, and involving practically the same issues presented here we said in the course of the opinion, as follows: "Defendant had contracted to buy from Robinson sawlogs delivered on the skidder at its mill in consideration of ten dollars per thousand. Defendant had no interest * * * as owner or otherwise, until they were delivered and paid for, at its mill. It was simply buying from Robinson a commodity which was owned, prepared, transported and delivered by Robinson."

Practically the same situation is presented here, as defendant was merely buying these stumps as a commodity, at a fixed price per ton, after deductions made, as before explained, and cannot be held responsible in compensation for the injuries received by plaintiff while performing services for Hollie in execution of a work under a contract with the Houston Oil Company with which defendant had no connection, and in which it had no interest.

The demand of the plaintiff was correctly rejected.

Judgment affirmed.

ELLIOTT, J. (concurring).

The opinion expresses and sets forth my opinion concerning the law and the facts, except that I notice it does not refer to the case Mrs. Ira P. Myers v. Newport Co., 17 La. App. 227, 135 So. 767, recently decided. The plaintiff contends that the two cases are alike and must be decided in the same way. In this case the defendants, among other matters, further deny that Bud Hollie was an independent contractor and aver that the Newport Company had no connection with or interest in the work of blasting and chopping stumps, either by Ward Windham or Bud Hollie; that the Newport Company's only connection with Bud Hollie was that it

from time to time purchased as a commodity certain firewood and fuel from Bud Hollie, which firewood and fuel was the property of Bud Hollie and was delivered at the place of business of your defendant, etc. In the Myers Case defendants, in articles 3 and 4 of their answer, substantially aver that the relation of the said Ira P. Myers to it (Newport Company) was that of an independent contractor, merely selling your petitioner (means Newport Company) broken up pine stumps and like material at a stated price per ton delivered at its plant; the said material being in each and every instance produced and gathered by the said Myers at his own and sole expense, etc. In article 4 it is again stated that the persons from whom it purchased material bore the relation to it of independent contractors, etc.

In the present case we conclude from the evidence that Bud Hollie merely sold and delivered to the defendant Newport Company a commodity—such as pine stumps, etc. In the Myers Case it was our conclusion from the evidence that it did not appear that the decedent, Myers, was a mere vendor of stumps. The impression made on us by the evidence in the two cases is not the same in each case, although Harry Smith, manager for Newport Company, testified on the trial of the present case that he had entered into the same arrangement with Hollie that he had made with Myers.