## HARRIS v. SOUTHERN KRAFT CORPORATION et al.

### No. 5661.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

Rehearing Denied June 1, 1938.
Certiorari Denied July 1, 1938.

Julius T. Long, of Shreveport, for appellant.

Madison, Madison & Files, of Bastrop, for appellees.

TALIAFERRO, Judge.

Plaintiff, a woodcutter, an employee of defendant, W. P. Stotts, on or about July 7, 1937, while performing the duties of his employment, had the misfortune of having his left eye seriously injured by a limb forcibly striking it. Medical aid was procured but it was soon found necessary to remove the eye entirely. On the theory that Stotts was the agent, employee, or independent contractor of the Southern Kraft Corporation of Bastrop, Louisiana, plaintiff joined that company with Stotts in the present suit to recover workman's compensation. He sued as for total and permanent disability to do work of any reasonable character. During trial, he modified his action to one for compensation for the loss of an eye,—one hundred weeks.

The Southern Kraft Corporation denied that at the time plaintiff was injured, theretofore or thereafter, any contractual relation existed between it and said Stotts; and, therefore, denied that he was its agent, employee or independent contractor. This defendant admitted that it purchased regularly pulp wood from Stotts, averring that the dealings between them superinduced the relationship of buyer and seller only. Liability to plaintiff, on any score, is specially denied.

Stotts denied generally all of the allegations of the petition, including those to the effect that he was the agent, employee or independent contractor of the Southern Kraft Corporation. He further pleaded that the pursuit of farming was his principal occupation or business; and that while engaged in the cutting, hauling and selling of pulp wood for several years, this line of business had not been his sole or principal occupation.

Plaintiff's demand against the Southern Kraft Corporation was rejected. He was given judgment against Stotts for one hundred weeks at $3.90 per week. The contract with his counsel whereby he would receive one-fifth of the amount or amounts collected under said judgment was recognized. Plaintiff appealed. Stotts was granted orders of appeal but it does not appear that he perfected either. He has made no appearance in this court, nor have briefs been filed on his behalf. Presumably, he is satisfied with the judgment against him.

This appeal tenders but one question for determination: Is the Southern Kraft Corporation responsible to plaintiff for compensation for the loss of an eye? To so hold, it must appear from the testimony that some sort of contractual relationship existed between this company and Stotts or plaintiff. The lower court experienced no difficulty in reaching the conclusion that such a relationship did not exist. We, likewise, have so concluded. The facts of the case are not seriously controverted.

Stotts has been engaged for eleven years in cutting, hauling and marketing

pulp wood. As a rule he buys the timber from land owners and hires men to cut it into required lengths and stack it. He hires other men to haul it to the nearest railroad points at which it is loaded into cars and shipped to the purchaser. He pays for the stumpage, for the cutting, hauling and loading. For these purposes he hired and fired whom he pleased. The wood was not engaged or contracted to any one until loaded on cars destined for the plant.

The arrangement between this company and Stotts appears to be as follows: The company purchased his wood as it was needed and as he was able to deliver it to them in cars. He was not obligated to sell the wood to it, nor was it obligated to buy any quantity of wood from him, excepting such as was covered by specific orders to him. The rule prevailing between them was this: When wood was desired from him, orders therefor would be mailed to him on Friday of each week. He would fill the order, and no more, if he had the wood on hand or could procure it immediately. After being loaded into cars, it was consigned to the company at Bastrop, freight payable by it. On arrival there the wood was measured and unloaded. The Company exercised no control or supervision whatever over the cutting, hauling or loading of the wood. On each Wednesday a check would be mailed to Stotts to pay for wood received during the previous week ending on Saturday. He was paid $3.50 per cord for all wood accepted at Bastrop. This price was subject to change at any time, dependent upon the company's will. The modus operandi between these defendants, reflected from the foregoing statement of facts, clearly negatives a contractual relationship between them. It does prove a relationship of buyer and seller. To such relationship, the workman's compensation law, Act No. 20 of 1914, cannot be made to apply. If this were not true, it may readily be seen, commerce and business dealings would be seriously interfered with and hampered. A merchant in Shreveport, after placing an order for goods with a manufacturer in New Orleans, would become responsible for compensation due a workman of the manufacturer injured while manufacturing the goods ordered.

Plaintiff's ingenious counsel argues that as a matter of fact there did exist some sort of contract between Stotts and the paper company, but that the true relation between them has been emasculated to circumvent the operative effects of the Workmen's Compensation Law.

■ All courts, we believe, conscientiously endeavor to enforce the provisions of this great humanitarian expression of the lawmaking power in a spirit of liberality towards the injured workman; and this attitude is unquestionably justified. But, regardless of all this, judgments in such cases must have dependable evidence as their basis. A plaintiff suing for such compensation must prove his case, as in other cases. Conjecture cannot serve this purpose.

Should it even be conceded arguendo that the corporation would designedly try to evade the operative effects of this law, as insinuated, no possible reason can be advanced for Stotts doing so; to the contrary, it would be most reasonable and natural for him, out of a desire to protect himself, to reveal the true facts because by so doing the corporation might be held liable in solido with him to the injured workman, as would be the case were plaintiff's contentions well founded. Stott's version of the facts of the relationship between himself and the corporation is identical with that of its representatives having knowledge of such facts.

The conclusions reached by the trial judge and now affirmed by us are supported by an abundance of cases, of which the following are a few, viz.: Eaves v. Hillyer-Edwards-Fuller, Inc., La.App., 139 So. 510; Whitley v. Hillyer-Deutsch-Edwards, Inc., La.App., 142 So. 798; Brasher v. Industrial Lumber Co., La.App., 165 So. 524. In this last case it was specifically held that: "Lumber company buying cordwood which was cut from land contracted for by seller without supervision of lumber company and delivered at designated place at specified price per cord by seller held not 'principal' of seller, so as to be liable for compensation for injuries to seller's employee (Act No. 85 of 1926, § 6)." Windham v. Newport Co. et al., La. App., 143 So. 538; Young v. Petty Stave & Lumber Co., 7 La.App. 90; Miller v. Brenner Lumber Co., 8 La.App. 141.

The judgment appealed from is affirmed with costs.