Plaintiff alleges in his petition that he injured his back on April 22, 1942, while he was in the employment of the Louisiana Long Leaf Lumber Company cutting, stacking, *Page 276 
and hauling in a truck wooden logs and posts. He claims to be totally and permanently disabled and prays for compensation on the basis of $4 per day for a seven day week for a period not exceeding 400 weeks. The defendant denied that plaintiff was in its employ when he claims to have received the injury, and avers that it purchased some fence posts from Alton Dowden for the price of 8 cents and 16 cents per post delivered at its plant at Fisher; that at the time the posts were purchased, said Dowden asked permission to cut some or all of said posts from its land which permission was granted; that said company had no contractual relation with the plaintiff, but sustained the relation to Dowden of purchaser of the posts at a fixed price.
There was judgment below in favor of the defendant, and the plaintiff has appealed.
There is no question but that the plaintiff fell while loading fence posts on a truck and injured his back rather seriously. Nor is there any dispute as to the fact that he was working for Dowden in getting out and hauling these fence posts to defendant's mill at Fisher. The principal question presented in the case is whether or not Dowden was a vendor of these posts and the defendant the purchaser, or whether Dowden was merely a contractor for getting out these posts on the company's land at a certain price per post.
While the petition alleges that the plaintiff was in the employ of the defendant company, all the testimony shows that he was in the employ of Dowden. As no objection was made to the introduction of evidence at variance with the pleadings, the evidence must be considered in determining the relation of the parties. The plaintiff bases his right to recover against the defendant company on the ground that Dowden was a contractor carrying out a part of the business of defendant in operating a saw-mill; that these fence posts were to be used by the defendant in fencing its plant at Fisher in compliance with an order of the government, as an incidental part of its business.
If the facts show that Dowden was a contractor and his contract for cutting, hauling and delivering these fence posts from defendant's land at a fixed price per post was incidental and necessary to the operation of the defendant's business of sawing lumber and operating a saw-mill, the plaintiff would be entitled to recover compensation from the Lumber Company, even though he had no contractual relation with that company at all. Seabury v. Arkansas Natural Gas Corp., 171 La. 199, 130 So. 1, and Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311.
These fence posts were used to fence the company's plant for the protection of the mill while cutting lumber for the government in furtherance of the war effort. The fencing of the plant was just as much a part of the operation of the sawmill as would be the building of ramps, dry kilns, sheds and other necessary buildings and enclosures. The operation of a sawmill is declared to be a hazardous occupation by subsection 2 (a) of Section 1 of Act 20 of 1914, and of course, this includes all work incidental to the operation of a saw-mill. Durrett v. Woods,155 La. 533, 534, 99 So. 430.
A part of the business of the Lumber Company was to fence its mill site under orders from the government, and if it undertook to execute that part of its work by contracting with Dowden to get out and deliver these fence posts from its lands, the Lumber Company was the principal and Dowden the contractor and both were liable to an employee of the latter for compensation under Section 6 of the Compensation Act. Act No. 20 of 1914.
While all the fence posts cut and hauled by Dowden were taken from tops and limbs on the lands of the defendant company, the company contends that Dowden under his contract was at liberty to get the posts from anyone else; that it was immaterial with the company where he got the posts. The timber man of the lumber company contacted Dowden with a view of getting him to cut and haul several thousand posts. The first suggestion was that Dowden was to cut the posts and haul them to the roadside for the price of 6 cents each, but it was finally agreed that he would deliver the posts at the mill and was to receive 8 cents for the ordinary posts and 16 cents each for the corner posts. It is shown by the evidence that Dowden received from 10 cents to 15 cents for posts that he sold to other persons and which he got from other lands.
A man by the name of McDaniel also got out posts on defendant's land under an arrangement similar to that of Dowden, and he testified that he was instructed to get the posts only on the lumber company's land. It *Page 277 
is also significant to note that the lumber company did not require an affidavit from Dowden as required by Act 275 of 1910 to the effect that the posts purchased from Dowden were owned by him and had been paid for, it being the practice of the company to require such an affidavit when purchasing timber products from another.
While the timber man of the lumber company testified that there was no provision in the contract with Dowden that the latter was to get the posts from the company's land, both plaintiff and Dowden testified that the posts were to be taken from defendant's land, and McDaniel, who had a similar contract, testified that he was to and did get all the posts cut and hauled by him from the defendant's land. Moreover, other facts and circumstances convince us that the posts were to be taken from the company's land; viz, the fact that the first negotiations with Dowden contemplated a price of only six cents per post delivered at the roadside, the price being raised when it was agreed that the posts were to be delivered at the mill site; the fact that Dowden agreed to get out and deliver the posts cut from the company's land at a much less price than he would had the posts been procured elsewhere; and the fact that the company did not require an affidavit from Dowden that the posts belonged to him and had been paid for, as was customary with the company in purchasing forest products from another. It is also significant to note that the company discharged Dowden from his contract immediately after plaintiff was injured. These facts do not show the existence of the relationship of vendor and vendee between Dowden and the company.
The cases which hold that the relation of vender and purchaser existed between those who cut, hauled and delivered logs, pulpwood and other products to a mill or factory show that the seller was at liberty to procure the timber and material wherever he saw fit, in the open market, and was not merely cutting and delivering timber and forest products of the mill owner at a specified price per unit. An analysis of the most pertinent cases cited by the defendant shows that the product was not taken from the land of the mill owner, viz: Brasher v. Industrial Lumber Co. et al., La.App., 165 So. 524; Miller v. Brenner Lumber Co., 8 La.App. 141; Windham v. Newport Co. et al., La.App., 143 So. 538; Whitley v. Hillyer-Deutsch-Edwards, Inc., et al., La.App., 142 So. 798; Harris v. Southern Kraft Corp. et al., La.App., 183 So. 65; Perkins v. Hillyer Deutsch Edwards, Inc., et al., La.App., 199 So. 590.
There can be no serious question but that plaintiff was totally disabled from doing hard manual labor from the date of the accident to the date of the trial, nor does the medical testimony show with any degree of certainty just how long he will be disabled. The evidence shows that plaintiff had bruises and contusions on his back. He was taken to the Reid Hospital at Leesville for treatment where he was treated for two or three weeks by Doctors Reid and Byrd. These doctors diagnosed his injury as a fracture of both lateral processes of the 4th lumbar vertebra with the possible fracture of the processes of other lumbar vertebrae. Two other doctors, Sanders and Stephens, examined plaintiff and testified that, in their opinion, the X-ray pictures made at Reid Hospital showed a fracture of these processes in the lumbar spine and corroborated the diagnosis of Doctors Reid and Byrd.
The plaintiff was examined for the defendant by Doctors Barker and Barber in June and by Dr. Fraser in May, all within two months of the accident. These doctors could find no fracture of the vertebrae, but the first two doctors found from X-ray pictures what they thought were formations indicating arthritis of long standing, and Dr. Fraser testified that he found some contortion of the pelvis on the lumbar vertebrae at the sacro-lumbo joint which he attributed to walking on one leg that is shorter than the other.
At the time of the trial about two months after the accident plaintiff was wearing a belt to support his back, and it is conceded by some of defendant's doctors that he was not able to do hard manual work at the time of the trial. Some of the doctors thought he would recover in six or eight weeks, some in six to eighteen months, and one or two thought he might never completely recover. Under this situation, he is entitled to an award of compensation for total and permanent disability for a period not exceeding 400 weeks. If in the meantime he is able to do similar work to that which he was doing when he was injured, the defendant has its remedy to be relieved of further payments of compensation.
The record shows that plaintiff was making $4 per day, and was working *Page 278 
four, five or six days per week. Under these circumstances, he can only recover on the basis of the normal week of six days. His compensation will be fixed on the basis of 65 per cent of $24 per week for a period not exceeding 400 weeks.
Plaintiff incurred a medical and hospital bill of $150 at the Reid Hospital for treatment, and Doctor Reid estimated that further treatment on account of the injury would entail the expenditure of another hundred dollars by the plaintiff. He is therefore entitled to recover the full sum of $250 for medical expenses.
For the reasons assigned, it is ordered that the judgment appealed from be avoided and reversed, and it is now ordered that plaintiff have and recover judgment against the defendant for compensation for total and permanent disability at the rate of $15.60 per week for a period not exceeding 400 weeks, beginning on April 22, 1942, with legal interest on the past due weekly installments from their respective due dates until paid, and for the further sum of $250 for medical expenses, together with costs of the suit in both courts.