LOTTINGER, Judge.
Clifford J. Belaire, plaintiff, brings this suit under the Workmen’s Compensation Act against Joe Elder, Port Barre Lumber Industries, Inc., A. M. Escuriex, and Consolidated Underwriters, for total permanent disability payments of $20 per week for 400 weeks, together with interest, medical expenses in the sum of $500, and all costs. Answers were filed by Joe Elder, Port Barre Lumber Industries and Consolidated Underwriters, wherein they denied that plaintiff was ever in the employ of Joe Elder o-r Port Barre Lumber Industries, Inc. Joe Elder is the president, and apparently the largest stockholder, of Port Barre Lumber Industries, Inc. Consolidated Underwriters is made a party defendant by virtue of the fact that it is the compensation insurer of Port Barre Lumber Industries, Inc. On motion of plaintiff, the suit against Joe Elder was dismissed before trial. A. M. *509 Escuriex is. insolvent and the suit against him is hot seriously pressed.
There is no dispute as to the injury, or the amount recoverable, the only dispute being as to the relationship between A. M. Escuriex, and Port Barre Lumber Industries, Inc. At the time of the accident, plaintiff was working at a lumber mill under A. M. Escuriex. Plaintiff contends that Escuriex was the agent, or contractor, of Port Barre Lumber Industries, Inc., which, under the compensation laws, would render the lumber company liable. Defendant contends that Escuriex was an independent lumber mill operator, that he operated his own mill, that he sold lumber to the lumber company, and that the only relationship 'between Escuriex and the lumber company was that of vendor and vendee.
The lower court found that Escuriex was the agent for Port Barre Lumber Industries, Inc., and rendered judgment as prayed for by plaintiff against Port Barre Lumber Industries, Inc.,' condemning the said defendant to pay to the said plaintiff the sum of $20 per week for 400 weeks, commencing as of April 6, 1948, with interest at 5% per annum on each and every weekly installment from its respective due date from judicial demand until paid, together with the sum of $500 for medical expenses and for all costs of court. From this judgment the defendant, Port Barre Lumber Industries, Inc., has appealed to this court.
The record shows that plaintiff, while working in a sawmill, near Forked Island, Vermilion Parish, on April 6, 1948, caught his arm in a pully, thus causing serious and permanent injuries to his left arm. Plaintiff contends that, at the time of the accident, Escuriex, was operating the said sawmill as agent, or contractor, of Port Barre Lumber Industries, Inc. Either of said relationships, if proven, .would render the lumber company liable for the.injuries sustained by plaintiff. The lumber company, on the other hand, contends that Escuriex was an independent- lumber operator who sold unfinished lumber to the lumber company, and that the only relationship between them was that of vendor and vendee. . ,
Defendant introduced into evidence a “supplemental timber agreement” passed before Donald W. Abshire, a Notary Public of Vermilion Parish, wherein an agreement, apparently oral, by and between Escuriex and Lovelace Langlinais, on February 19, 1948, was enlarged. In said agreement, the right was given Escuriex to operate a sawmill and cut timber on certain property owned by Langlinais and located in Vermilion Parish. In addition thereto, the following agreement, between Escuriex and Mr. Elder of Port Barre Lumber Industries, Iric., was introduced by defendant:
“February 19, 1948
“I hereby acknowledge that Joe Elder has delivered to me one (1) 'Corinth Sawmill, one (1) -new inserted point F-9 saw, one lot of Belts, one (1) Corinth two saw edger, parts for one cut-off saw, one (1) Alice-Chalmers L-90 motor, one (1) sawdust conveyor chain, all being in good used condition.
“It is understood and agreed that this equipment will be moved Lovelace Lan-glinais property, Vermilion Parish and erected. I further agree to purchase this mill from Joe Elder at a price approximating $3,725.00 F.O.B. Port Barre and Marks-ville. Mortgage notes to be executed in favor of Joe Elder and some additional securities put up. on this sale.
“It is further understood that -any lumber delivered before these mortgage notes are executed that you may at your option deduct $2.00 per M' to apply on the first note.
“Port Barre Lumber Industries, Inc.
“(Sgd.) A. M. Escuriex
(Sgd.) Joe Elder
“Sworn .to and subscribed before me this 24 day of April, 1948.
“(LS) Rodney A. Carriere “Notary Public”
It is noted that the above quoted agreement and the alleged oral agreement between Escuriex and Langlinais were both of the same date, i. e. February 19, 1948. It is further noted that the above quoted agreement, although dated February 19, *510 1948, was not subscribed by the Notary Public until April 24, 1948, some eighteen days after the accident to plaintiff. On commenting on these agreements, the lower court said: •
“On February 19, 1948, the defendant, Escuriex, purchased a tract of timber from one Lovelace Langlinais. The agreement was supplemented by Notarial Act on February 20, 1948. (D-5.) On the 19th of February, 1948, Escuriex entered into a purported ‘agreement’ or ‘sale’ of certain sawmill machinery with Joe Elder representing Port Barre Lumber Industries. The ‘agreement’ is dated February 19, 1948, and was acknowledged before a Notary Public on April 24, 1948. (The accident involved occurred on April 6, 1948.) The ‘agreement’, necessarily plays an important part in the case. (See D-l).
“The ‘agreement’ acknowledges receipt of the machinery and contains an agreement to purchase the machinery at some-cime which is not indicated. The ‘agreement’ is indefinite as to time and date the sale will be executed, however, if and when it is consummated mortgage notes are to be executed and some additional securities are to be given. The consideration mentioned in the agreement is ‘approximately $3,725 F.O.B. Port Barre and Marksville’. We must bear in mind that no sale was ever executed, no' mortgage notes or other security given. Mr. Escuriex testified that the consideration was ‘around $6000.00. I believe around that/
“The ‘agreement’ provided that the mill was to be moved to the Lovelace Langlinais property in Vermilion Parish, and ‘It is further understood that any lumber delivered before these mortgage notes are executed that you may at your option deduct $2.00 per M to apply on first note.’ Mr. Escuriex testified, ‘I do not remember exactly, 21/4 or three dollars on a thousand feet of lumber. I do not recall exactly.’
“In attempting to reconcile the purported ‘agreement’ to sell and the testimony, we must bear in mind that the ‘agreement’' is dated February 19, 1948, and the ‘timber purchase’ was made on the same date. Which came first we do not know, however, there is considerable distance between Port Barre and near Kaplan in Vermilion, so we cannot say whether all the parties were together or not at the time. The evidence leads us to assume that the timber agreement was made first, yet for some unknown reason the ‘sale agreement? was acknowledged before a Notary Public on April 24, 1948, eighteen days after the accident, and 11 days before Escuriex ceased operations May 7, 1948. Mr. Escuriex could not state what the consideration was to be, nor could he give the amount of deduction exactly. The ‘agreement’ provided $3,725 — he says around $6000.00. The ‘agreement’ provided $2.00 per thousand feet — he said $2.50 or $3.00.
“While the ‘agreement’ provided for the receipt of lumber by the Company, and deduction at its option — Mr. Escuriex, uncon-tradicted, stated that.all the lumber was to go to the company, and if any lumber was delivered to anyone else a strict accounting was to be made to the Company. One sale was made to Krause & Managan, and accounted for after ,the accident, and a little bit, mostly scrap, sold to some farmers.
“Mr. Escuriex had no copies of any of the documents in question. They were all in the possession df the 'defendant. While he impressed the Court as being a man of intelligence and considerable experience in the lumber and logging business, yét he knew nothing of this business, the amount he owed the Company, the amount of deductions to be made, how much was actually paid on the machinery, 'had no payrolls or other evidence of the operations and no knowledge whatsoever of the business except that which was kept by the Company at its office in Port Barre. The checkers and haulers were vague arid indefinite as to the loads and output, slips for hauling were given very seldom, wages were not paid regularly and only when an ‘atcount-ing’ was given by the Company; considerable portion of the lumber was hauled by the company trucks, for which it- kept the only records. It is inconceivable that a man of Escuriex’s apparent intelligence and ability would have handled an operation involving the amount of labor and money as this, with so little regard for the conduct of the *511 business and its outcome. He lost money.it is true, yet- he turned .the property with additions and lumber back without any accounting.”
Several days after the injuries were sustained by plaintiff, Mr. Escuriex forwarded the following letter to Mr. Elder:
“Abbeville, La.
“May 7, 1948.
“Mr. Joe Elder,
“Port Barre, La.
“Gentlemen:—
“In view of the fact that I intend to close down the sawmill that I have been operating in Vermilion Parish, near Kaplan that your firm sold to me which I agreed to malee notes for I either agree to bring the mill back to Port Barre and allow you to charge me $2.00 per M' for what lumber I sawed on the mill which part you have already held off in your settlements, or, if satisfactory to you I agree to turn the mill over to Preston Scruggins or any other party that you designate leaving -the mill, where.- it stands. ■
“I also agree to turn over my timber contract to either Scruggins or other parties that you name on the.same basis that I am buying the timber. The- timber contract refering to is myself to Lovela-ce Langlinois. In the event the mill is turned over to parties that you designate this $2.00 per M' should be retained by you as rent for the mill.
“I also ask that you collect from whoever runs the mill the amount of stumpage paid for that is now cut down in the woods and timber cuttings that I have already paid in the amount of $5.00 per M'. The money that I have expended on hauling and setting up the mill the party that you turn the mill over to is to pay me this from the profits of the mill operation but I do not hold you for this money.
“(Sgd.) A. M. Escurieux
“Accepted
“(Sgd.) Joe Elder”
As to the above letter, the lower court said: “The deduction of $2.00 was to be considered as ‘rent.’ No collections were ever made for stumpage and timber down m the woods, for which someone was to pay for. The money Escuriex expended in hauling and setting up the mill was never returned to him.” .
Testimony showed that, at the time Es-curiex began operating the -mill, he told Joe Elder that he carried compensation insurance: After the accident to plaintiff, Es-curiex informed Elder that he was not covered, whereupon Elder immediately wired his insurance carrier to extend his insurance to cover the operations of Es-curiex. The following letter, written by the agent for Consolidated Underwriters, was introduced into evidence by Mr. Go-rdy, the attorney for plaintiff:
“Beaumont, Tex.
“June 11, 1948.
“268413-Clifford Belliard vs Port -Barre Lbr. Co.
“Mr. Walter B. Gordy, Jr.
“Attorney at Law “Abbeville, Louisiana
“Dear Mr. Gor-dy:
“We have your letter of June 8, 1948, asking us to- give you the reason why we have refused -compensation to Mr: -Clifford Belliard on account of injury sustained on April 6, 1948, while employed by Mr. A. M. Escuriex. We have never issued a contract of insurance to Mr. A. M. Escuriex. However, we have for some time past carried compensation coverage on the Port Barre Lumber Industries, Inc. of Port Barre, Louisiana. On April 8, 1948, Port Barre Lumber Industries, Inc. asked that we include'the operation of Mr. A. M. Es-curiex at Abbeville in our contract with them. On that same date we advised Port Barre Lumber Industries, Inc. that their coverage was extended to Mr. A. M. Es-curiex’s operations at Abbeville. This was two days after Mr. Clifford Belliard’s accident and we could no-t, and would not, make this contract retroactive to include an accident which had already happened. We suggest that you check this matter with Mr. Escuriex to verify the facts we have given.
“Yours very truly,
“T. H. Mastín & -Company
■“By: E. W. McCall” '
*512 It is noted that the insurance contract of the lumber company was extended' to cover the operations of Escuriex. The evidence shows that the lumber company was billed for the additional premium, which .additional premium was never paid by Es-curiex.
The evidence further shows that Elder visited the site of operations on at least three occasions. On these occasions he gave orders 'as to ii'ow the lumber should be cut, how thick to cut it and how wide to cut it, and how to stack it. These orders were carried out with no objection from Escuriex. Practically all the lumber cut was sent to the lumber company, in lumber company trucks, and a complete accounting was given the lumber company of the small .amount of lumber which was not delivered to them. It appears that little, if any, records were kept by Escuriex. Mr. Wiley Meaux, a truck driver, testified that he hauled lumber from the mill to the Port .Barre yard; That no check was made of the lumber delivered; and that only on •one occasion did he receive a receipt from the yard acknowledging delivery. This receipt was given three days after the accident to plaintiff, prior to that time, no receipts were given, or checks made, of the loads delivered.
The agreement to purchase executed between Escuriex and Elder was very indefinite. No daté was given for the execution of the act of sale, nor was the .-amount, or maturity dates, of the maturity notes alleged. Had the lumber company, a two million dollar per year business, actually intended to give Escuriex full charge .and control of the mill, we believe that .they would have been more specific as to •.the obligations imposed upon him. There was nothing in the agreement, nor in the record, to indicate that the company did not have the power to terminate the relationship with Escuriex at any time. We do not believe that either party to this proposed contract could have enforced same by specific performance. Dunn v. Spiro, La.App., 153 So. 316,. and Young v. Cistac, 157 La. 771, 103 So. 100. The actual sale •of the mill was never perfected. The Port Barre Lumber Company never actually parted with title to the mill. We do not think that Escuriex was the bona-fide owner of the mill' at which plaintiff was employed. According to the evidence, we find that all the lumber was to go to the Port Barre Lumber Company and if any lumber was delivered to anyone else a strict accounting was to be made to the company. Only one sale was made to Krause & Mana-gan and accounted for after the accident and a little scrap was sold to some farmers. All the other lumber cut by Escuriex was delivered to the Port Barre Lumber Company and mostly in their own trucks. We also find the lumber company giving orders to the employees under Escuriex as to how the lumber should be cut, length, width and type. We find that after the accident occurred, that the lumber company ordered their compensation insurance carrier to include the Escuriex operation in their workmen’s compensation policy. From all of the facts and circumstances as found in this case, we do not think that Escuriex was an independent lumber operator and we further do not think that the relationship between Escuriex and the lumber company was that of vendor and vendee. All the above indicates that there was a principal-agent relationship existing between the lumber company and Escuriex at the time of the accident and that the .plaintiff was an employee of the lumber company.
Assuming for sake of argument that the relationship of principal and agent did not exist between the lumber company and Escuriéx at the time of the accident and that the plaintiff was not an employee of the lumber company, the most remote relationship that could have existed between Escuriex and the lumber company would have been that of principal and contractor. Section 6, Paragraph 1, of the Workmen’s Compensation Act, Act No. 20 of 1914, § 6, subd. 1, as amended by Act No. 85 of 1926, § 1, reads as follows: “That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contrac *513 tor of the whole or any partof the work undertaken by the principal, the principal shall be liable to pay to any- employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him; and where compensation is claimed from or proceeding's are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.”
In Thibodaux v. Sun Oil Company, La.App., 40. So.2d 761, 764, this court, speaking through Judge Dore, said: “It is now well settled that if the work contracted for is within the ‘trade, business [and] occupation’ of defendant, or within the category of operations, it may not be contracted for except under the conditions imposed by Section 6 of the ‘Compensation Act”. This theory was applied in Owers v. Louisiana Long Leaf Lumber Company, La.App., 14 So.2d 275, Seabury v. Arkansas Natural Gas Corporation, 171 La. 199, 130 So. 1, and Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311.
The defendant company was in the lumber business. It was shown that defendant operated mills of its own. Escuriex cut the timber and delivered same to defendant in a rough state, under the direction and control of defendant. The defendant company dressed the lumber and sold it to retail outlets. The contract with Escuriex was necessary and incidental to the business of defendant company so as to place plaintiff under the provisions of Section 6, Paragraph 1, of the Workmen’s Compensation Act. Owers v. Louisiana Long Leaf Lumber Company, supra, Seabury v. Arkansas Natural Gas Company, supra, and Thibodaux v. Sun Oil Company, supra.
It is to be borne in mind that the' judgment rendered by the lower court was rendered in favor of the plaintiff — appellee and against defendant — appellant, Port Barre Lumber Industries, Inc., and that is the judgment that has been appealed from. The plaintiff and app-ellee has asked in his brief that the judgment should be affirmed in favor of the said plaintiff and against the said Port Barre Lumber Industries, Inc. and Consolidated Underwriters. We fail to find where the plaintiff and ap-pellee in this case has filed an answer .to this appeal asking that the judgment be amended so as to include Consolidated Underwriters. In view of the appellee’s failure to file such an answer, we are unable to comply with his request, but can only affirm the judgment as written. For the reasons assigned the judgment of the lower court is affirmed at appellant’s cost.
Judgment affirmed.